## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAVID KELLEY, Derivatively on behalf of KOHL'S CORPORATION, | Civil Action No. |
| Plaintiff, | SHAREHOLDER DERIVATIVE COMPLAINT |
| v. | |
| PETER BONEPARTH, WENDY ARLIN, MICHAEL J. BENDER, YAEL COSSET, CHRISTINE DAY, H. CHARLES FLOYD, MARGARET L. JENKINS, THOMAS A. KINGSBURY, ROBBIN MITCHELL, JONAS PRISING, JOHN E. SCHLIFSKE, ADRIANNE SHAPIRA and ADOLFO VILLAGOMEZ, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| KOHL'S CORPORATION, | |
| Nominal Defendant. | |

## SHAREHOLDER DERIVATIVE COMPLAINT

1.      Plaintiff, David Kelley ("Plaintiff"), by his attorneys, brings this Complaint derivatively on behalf of Nominal Defendant Kohl's Corporation ("Kohl's" or the "Company"). Plaintiff bases his allegations on personal knowledge and, as to all other matters outside his personal knowledge, upon information and belief based on the investigation of counsel, which includes without limitation: (i) review and analysis of public filings with the United States

1

Securities and Exchange Commission ("SEC"); (ii) review and analysis of filings in state and federal court, including pleadings in the related securities fraud class action, *Shanaphy v. Kohl's Corp. et al.*, No. 2:22-cv-1016-LA (the "Securities Class Action"); and (iii) review and analysis of press releases, news reports, analysis reports, industry reports, investor conference call transcripts, and other information available in the public domain.

## NATURE OF THE ACTION

2.     This is a stockholder derivative action brought for the benefit of nominal defendant Kohl's against certain of its current and former officers and directors for breaches of fiduciary duty during the period from at least October 20, 2020 to the present (the "Relevant Period"). Kohl's has suffered and will continue to suffer significant financial and reputational harm because of the wrongs committed by, among others, the Company's Board of Directors ("Board")—comprised of the Individual Defendants—as described below.

3.     On October 20, 2020, Kohl's began touting a new strategy to "drive top-line growth," "expand operating margin," and make the Company "the most trusted retailer of choice for the active and casual lifestyle" ("Strategic Plan"). The Strategic Plan boasted of Kohl's purportedly strong foundation of customers, industry-leading loyalty and charge card programs, high volume of stores, and large and growing digital business.

4.     The Strategic Plan purportedly reflected "new initiatives to position the company for long-term success," such as "be[ing] the destination for active, casual and beauty for the entire family from the most trusted brands, always delivering quality and discovery," "lead[ing] with loyalty and value through a best-in-class rewards program," and "offer[ing] a differentiated omnichannel experience that is easy and inviting, no matter how customers want to shop." At

core, according to Company statements, Kohl's was "focused on increasing profitability with a goal of expanding its operating margin to 7% to 8%."

5.     Unfortunately, these representations and myriad others in the same vein the Board caused or otherwise allowed Kohl's to issue during the Relevant Period presented the Company's business, operations, and compliance policies in a materially false and misleading light.

6.     Kohl's day of reckoning arrived on May 19, 2022, when the Company issued and filed with the SEC on Form 8-K a press release announcing the Company's 2022 first fiscal quarter ("Q1 2022") results ("5/19/22 8-K").  In the 5/19/22 8-K, Kohl's reported, among other things, that net sales would be far lower than expected and the Company would be cutting its full year earnings forecasts—results at odds with management's many representations, particularly those regarding the successful execution of the highly-touted Strategic Plan.

7.     This news sent Kohl's stock price tumbling.

8.     Coinciding with the above scheme, the Board and management were working throughout the Relevant Period together to preserve their prestigious and high-paying positions. As investors would learn, facing potential loss of control of the Board—and thereby ego-inflating, lucrative jobs—Individual Defendants also engaged in conduct designed to maintain control of the Company and artificially inflate the price of the Company's stock, including mischaracterizing the availability and terms of strategic alternatives offered by willing buyers.

9.     In fact, the Individual Defendants went as far as denying reports that the Company had received offers to sell, dismissing them as "unfounded speculation."  When multiple news outlets began reporting details of the purported non-existent offers, which were at a 30+% premium to Kohl's then current, albeit inflated, stock price, Individual Defendants changed course,

conceding it had offers but those offers did "not adequately reflect the Company's value," further inflating the Company's stock price.

10.     Plan one (denial) having failed and an election fast-approaching, the Individual Defendants sought to assure their Board positions by: (a) adopting a poison pill, in order to dissuade further unsolicited offers (no matter how favorable) and (b) claiming that Board changes would hamper a potential sale. To pacify activist investors, Individual Defendants claimed to enter "exclusive talks" with Franchise Group, Inc. ("FRG"), again boosting Kohl's share price. However, once FRG conducted its due diligence and thus the problems associated with the failed Strategic Plan, it reduced its offering price drastically, such that there was no longer a deal to be made.

11.     On June 30, 2022, the Company announced that it was no longer in talks to sell— to FRG or anyone else *and* that investors should expect lower than forecasted sales for the second quarter of 2022. This news sent the Company's stock price crashing, falling 19.6% in a single day.

12.     In light of the above, and in accordance with Wisconsin law, on October 13, 2023, Plaintiff, through his counsel, served a pre-suit litigation a demand to the Board demanding the Board commence an investigation into possible wrongdoing by certain of the Company's current and former directors and officers ("Demand"). A true and correct copy of the Demand is attached hereto as Exhibit A.

13.     On December 13, 2023, the Board acknowledged receipt of the Demand through counsel at Latham & Watkins, LLP ("Latham"), who requested proof of Plaintiff's Kohl's stock purchase and stated that the Board decided to "defer making a final decision on the Demand at this

time" ("12/13/23 Letter").  A true and correct copy of the 12/13/23 Letter is attached hereto as Exhibit B.

14.    On January 16, 2024, Plaintiff's counsel provided proof of Plaintiff's purchase of Kohl's stock to Latham and noted that under Wisconsin law, the statute of limitations for the Company's claims was quickly approaching ("1/16/24 Letter").  The 1/16/24 Letter requested that the Company execute tolling agreements by April 1, 2024 with each of the individuals named in the Demand in order to protect Kohl's valuable claims.  Plaintiff has received no response. A true and correct copy of the 1/16/24 Letter is attached hereto as Exhibit C.

15.    To date, Plaintiff has received no substantive response to his Demand and the commencement of this action is necessary to protect the Company's claims.  The Board's failure to investigate the allegations in the Demand and take even the most basic steps to preserve the Company's claims, demonstrates the Board's unwillingness to evaluate the Demand in good faith. As such, this shareholder derivative action should proceed.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

17.    This Court has jurisdiction over each Defendant because they reside in this district or have sufficient minimum contacts with this district to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state, has consented to service in this state and its principal place of business is within this district.

5

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because one or more of the Defendants either resides in or maintains offices in this district, a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' (defined below) primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Kohl's occurred in this district, and Individual Defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

## PARTIES

19. Plaintiff is a current shareholder of Kohl's and has continuously held his common stock since May 2020. Plaintiff is a citizen of Arkansas.

20. Nominal party Kohl's is a Delaware corporation that maintains its principal executive offices at N56 W17000 Ridgewood Drive, Menomonee Falls, WI. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "KSS."

21. Defendant Peter Boneparth ("Boneparth") has served as a Board member since 2008 and as Chairperson since 2022. Boneparth is a member of the Board's Compensation Committee, Nominating and Environmental, Social and Governance Committee ("Nominating Committee") and Finance Committee. On November 8, 2023, Kohl's filed with the SEC on Form 8-K a press release stating that Boneparth retired from the Board immediately following the Company's May 15, 2024 shareholders' meeting ("11/8/23 8-K"). Upon information and belief, Boneparth is a citizen of California.

22. Defendant Wendy Arlin ("Arlin") has served as a Kohl's Board member since 2023 and is a member of its Audit Committee. Upon information and belief, Arlin is a citizen of Ohio.

23. Defendant Michael J. Bender ("Bender") has served as a Board member since 2019 and is a member of the Board's Audit Committee and Chairperson of its Nominating Committee.

According to the 11/8/23 8-K and the Company's Definitive Proxy Statement filed on Form DEF 14-A with the SEC on April 5, 2024 ("4/5/24 Proxy"), Bender will become the Board's Chairperson and a member of its Compensation Committee, Nominating Committee and Finance Committee effective immediately following the Company's May 15, 2024 shareholders' meeting. Upon information and belief, Bender is a citizen of Ohio.

24.    Defendant Steve A. Burd ("Burd") served as a Kohl's Board member from 2001-2022.  Upon information and belief, Burd is a citizen of California.

25.    Defendant Yael Cosset ("Cosset") has served as a Board member since 2020 and is Chairperson of the Board's Audit Committee.  Upon information and belief, Bender is a citizen of Ohio.

26.    Defendant Christine Day ("Day") has served as a Board member since 2021 and is a member of the Board's Audit Committee and Compensation Committee.  Upon information and belief, Bender is a citizen of Canada.

27.    Defendant H. Charles Floyd ("Floyd") has served as a Board member since 2017 and is a member of the Board's Compensation Committee.  Upon information and belief, Floyd is a citizen of Illinois.

28.    Defendant Gass ("Gass") served as a Kohl's Board member from 2018-2021.  Gass also served as the Company's CEO from 2018-2022.  Upon information and belief, Gass is a citizen of California.

29.    Defendant Margaret L. Jenkins ("Jenkins") has served as a Board member since 2021 and is a member of the Board's Audit Committee.  Upon information and belief, Jenkins is a citizen of South Carolina.

30.     Defendant Thomas A. Kingsbury ("Kingsbury") is Kohl's CEO and has served as a Board member since 2021.  Kingsbury is a member of the Board's Finance Committee.  Upon information and belief, Kingsbury is a citizen of Wisconsin.

31.     Defendant Robbin Mitchell ("Mitchell") has served as a Board member since 2021 and is a member of the Board's Audit Committee and Nominating Committee.  Upon information and belief, Mitchell is a citizen of New York.

32.     Defendant Jonas Prising ("Prising") has served as a Board member since 2015 and is Chairperson of the Board's Compensation Committee.  Upon information and belief, Prising is a citizen of Wisconsin.

33.     Defendant John E. Schlifske ("Schlifske") has served as a Board member since 2011 and is Chairperson of its Finance Committee.  Schlifske will begin serving as Chairperson of the Nominating Committee immediately following the May 15, 2024 investor meeting.  Upon information and belief, Schlifske is a citizen of Wisconsin.

34.     Defendant Adrianne Shapira ("Shapira") has served as a Board member since 2016 and is a member of the Board's Nominating Committee and Finance Committee.  Upon information and belief, Shapira is a citizen of Georgia.

35.     Defendant Frank V. Sica ("Sica") served as a Kohl's Board member from 2018-2022.  Upon information and belief, Sica is a citizen of New Jersey.

36.     Defendant Stephanie A. Streeter ("Streeter") served as a Kohl's Board member from 2007-2023.  Upon information and belief, Streeter is a citizen of Arizona.

37.     Defendant Adolfo Villagomez ("Villagomez") has served as a Board member since 2023 and is a member of the Board's Audit Committee.  Upon information and belief, Villagomez is a citizen of Georgia.

38.     Defendants Boneparth, Arlin, Bender, Burd, Cosset, Day, Floyd, Gass, Jenkins, Kingsbury, Mitchell,  Prising, Schlifske, Shapira, Sica, Streeter and Villagomez, collectively, are referred to as "Individual Defendants."

39.     Defendants Arlin, Bender, Cosset, Day, Jenkins, Mitchell and Villagomez, collectively, are referred to as "Audit Committee Defendants."

**INDIVIDUAL DEFENDANTS' DUTIES**

40.     By reason of their positions as officers, directors, and/or fiduciaries of Kohl's, and because of their ability to control the business and corporate affairs of Kohl's, the Individual Defendants owed Kohl's and its shareholders fiduciary obligations of good faith, loyalty and candor, and were and are required to use their utmost ability to control and manage Kohl's in a fair, just, honest and equitable manner.

41.     Further, Individual Defendants were and are required to act in furtherance of the best interests of Kohl's and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest and benefit.  Each director and officer of the Company owes to Kohl's and its shareholders the fiduciary duty to exercise good faith and due diligence in the administration of the Company's affairs, and in the use and preservation of its property and assets, as well as the highest obligation of fair dealing.

42.     Because of their positions of control and authority as directors and/or officers of Kohl's, having knowledge of material non-public information regarding the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  To discharge their duties, the officers and directors of Kohl's were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties the officers and directors of Kohl's were required to, among other things:

9

a. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner, and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public; and

c. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

43. The Audit Committee Defendants are additionally subject to the responsibilities imposed on them by the Company's Audit Committee Charter which states, in pertinent part:

The Audit Committee (the "Committee") is appointed by the Board of Directors (the "Board") of Kohl's Corporation (the "Company") to assist the Board in its oversight of: financial accounting and reporting practices of the Company; the quality and integrity of the Company's financial statements; the qualifications and independence of the Company's independent auditors; the performance of the Company's independent auditors and the Company's internal audit function; and the Company's compliance with applicable legal, ethical and regulatory requirements. The Committee shall also prepare the report that the rules of the Securities and Exchange Commission require to be included in the Company's annual proxy statement.

## SUBSTANTIVE ALLEGATIONS

44. Kohl's is one of the largest retail department store chains in the United States, with more than 1,100 stores in 49 states. The Company sells apparel, footwear, accessories, beauty, home products and other retail goods, through its stores and website.

45. On October 19, 2020, Kohl's announced a "a new vision and long-term strategic framework" to become "the most trusted retailer of choice for the active and casual lifestyle," including "a goal of expanding its operating margin to 7% to 8%" by 2023.

46.     On February 21, 2021, a group of activist investors lead by Macellum Capital Management ("Macellum" and, together with other activist investors, the "Investor Group" or "IG"), published a letter stating "Kohl's stock price has chronically underperformed against its peers and relevant indices because the Board has failed to help develop and oversee a strategic plan to respond to a rapidly changing retail landscape" ("IG Letter").  With the IG Letter, the Investor Group explained that the 2020 Strategic Plan was "strikingly similar" to Kohl's ill-fated "Greatness Agenda" from 2014, of which then Chief Merchandising Officer and now chief executive officer Individual Defendant Gass was a key leader and architect.

47.     The Investor Group further stated in the IG Letter that Kohl's issues were "fixable" but "will require a high-powered Board with relevant expertise and experience that does not shy away from its oversight role and will hold management accountable."  Indeed, the IG Letter included criticisms of the Board's approval of incentive plans that effectively awarded executives targeted bonuses for declining sales results, noting that many Board members lacked retail experience and had invested "a mere $1.2 million in Company stock while collecting over $23 million in director compensation," indicating that the Board was "woefully misaligned and must lack conviction and confidence in Kohl's."

48.     In light of the issues highlighted in the IG Letter, the Investor Group nominated nine candidates for election to the Board at the 2021 annual shareholders' meeting.

49.     On February 22, 2021, Kohl's published and filed with the SEC on Form 8-K a responsive press release, stating "we reject the Investor Group's attempt to seize control of our Board and disrupt our momentum, especially considering that we are well underway in implementing a strong growth strategy and accelerating our performance" ("2/22/21 8-K").  The 2/22/21 8-K further stated "[w]e are already making progress against our strategy"; "we are already

gaining traction"; and "[w]e are confident that our new strategy, which includes important sales growth and profitability initiatives, will drive long-term shareholder value, and we are already delivering progress against it."  Finally, the 2/22/21 8-K stated "[o]ur executive compensation programs are directly linked to corporate performance with the objective of increasing long-term shareholder value" and "[o]ur Board and management team will continue to aggressively pursue the best interests of all shareholders."

50.     The public squabbling continued.  For example, on March 9, 2021, Kohl's issued and filed with the SEC on Form 8-K an investor presentation, in which the Company warned that the "Activist Investors' campaign for board control threatens continued progress and momentum."

51.     On April 6, 2021, the Investor Group published a letter to the Board describing "Kohl's Pattern of Misleading Statements" ("4/6/21 IG Letter") stating, in relevant part:

> In an apparent effort to win shareholder support [the Board] have repeatedly made misleading claims about their performance and the success of their 'new' strategy. These claims appear to stem from a desire to protect the seats of five long-tenured incumbent directors at any cost – or more precisely, at the cost of spending an estimated $10 million of shareholder money on proxy defense advisors and related services."

                          *     *     *

> [T]he Investor Group and their nominees see a different story–a Board lacking in credibility and willing to say anything to create a false narrative that they have a new strategic plan which is showing signs of success.

52.     In April 2021, Kohl's and the Investor Group reached an agreement ("April Agreement").  As part of the April Agreement, the Investor Group installed two of its own directors on the Board—Individual Defendants Kingsbury and Jenkins—and two existing Board members would retire by 2022.

53.     The April Agreement also added former lululemon athletica CEO Individual Defendant Day to the Board purportedly to add retail experience.  Finally, under the April

12

Agreement, Kohl's established a standing Finance Committee, which would include Individual Defendant Kingsbury. In exchange, the Investor Group agreed not to submit its white proxy cards for tabulation at the shareholder meeting. The Investor Group further "agreed to abide by certain customary standstill provisions until 30 days prior to the close of the nomination window for the Company's 2022 Annual Meeting of Shareholders." Analysts reacted favorably to news of the April Agreement, with Jeffries, for example, calling it "a Triple Win."

54.     On January 12, 2022, the aforementioned standstill period expired. The same day, Kohl's proposed to Macellum a new standstill agreement to last approximately two months, *i.e.* long enough that Macellum would not be able to propose its own slate of directors for the 2022 annual shareholder meeting (the "2022 Shareholder Meeting"). In exchange, Kohls offered to provide Macellum with a preview of the Company's next quarterly earnings results and related materials. Macellum rejected this attempt to buy its silence.

55.     On January 18, 2022, after market close, Macellum announced that it was nominating its own slate of director candidates for election at the 2022 Shareholder Meeting, criticizing the Board for "Another Wasted Year," and expressing its intention to force the Board to "Align executive compensation goals with shareholder value creation. . . . Setting declining targets, then beating them and richly rewarding executives is a recipe for stagnation" ("1/18/22 Macellum Letter")

56.     The 1/18/22 Macellum Letter further revealed to the market that Kohl's potentially had received buy offers:

> We firmly believe that without significantly more change to the Board, the Company will fail to deliver acceptable value creation in the years to come. Absent more Board change, we believe the Board must pursue strategic alternatives. **Macellum suspects that there are a number of well-capitalized financial sponsors interested in Kohl's. We also have heard that the Board and its representatives have been approached and rebuffed overtures from credible buyers.** This is

unacceptable and, if true, would seem to constitute a meaningful breach of the Board's fiduciary responsibilities." (emphasis added)

57.     The same day, Kohl's published (but did not file with the SEC) a press release calling Macellum's statements in the 1/18/22 Macellum Letter "unfounded speculation." Nevertheless, the market reacted favorably to this information, with Kohl's stock price increasing approximately 4% on unusually heavy volume.

58.     On Friday, January 21, 2022, after market close, The Wall Street Journal published an article titled "Kohl's Gets $9 Billion Bid from Starboard Value Group," reporting that hedge fund Starboard Value LP had offered to buy the Company for $64 a share in cash (a 37% premium).

59.     On Saturday, January 22, 2022, the New York Times reported in an article titled "Kohl's Receives $9 Billion Offer Backed by Activist Investor," that "private equity firm Sycamore Partners has also reached out to Kohl's about potential deal, according to one of the people familiar with the matter, as well as a second person close to the matter. The firm is known for its acquisitions of retailers, including Staples and Belk Department Store." The Sycamore Partners bid was reported to be "*$64 a share, 37 percent premium* to its closing price of $46.84 on Friday [Jan. 21, 2022]. (emphasis added)

60.     On Monday morning, January 24, 2022, the stock price opened at $61.71 per share, a 31.7% increase over the closing price the previous Friday.

61.     Also on January 24, 2022, despite having called Macellum's claim that the Board "rebuffed overtures" from buyers as "unfounded speculation," Kohl's issued (but did not file with the SEC) a press release confirming that the Board had, in fact, "received letters expressing interest in acquiring the Company" ("1/24/22 Press Release"). The 1/24/22 Press Release further stated:

> The Kohl's Board of Directors will determine the course of action that it believes is in the best interests of the Company and its shareholders. Shareholders are not required to take any action at this time. Kohl's does not intend to further comment

publicly on these matters unless it determines it is in the best interests of shareholders to do so.

62.     On this news, Kohl's stock price rose 26% to $63.71 per share on unusually high trading volume.

63.     On January 25, 2022, Macellum published a letter it sent to the Board stating:

the market's extremely positive reaction to the expressions of interest confirmed this morning indicates to us that investors want an organized sales process. Multiple sell-side analysts also issued notes yesterday that acknowledge the superior value that can likely be obtained via a sale. In our view, the Board cannot ignore yesterday's approximately 35% spike in the Company's share price and try to chill acquirers' interest.

64.     Unfortunately, "chill acquirers' interest" is exactly what the Board set out to do. On February 4, 2022, Kohl's issued and filed on Form 8-K an announcement that "The Kohl's Board of Directors (the Board) has determined, following a review with its independent financial advisors and upon the recommendation of its Finance Committee, that the valuations indicated in the current expressions of interest which it has received do not adequately reflect the Company's value in light of its future growth and cash flow generation" ("2/4/22 8-K").  The 2/4/22 8-K further stated that the Board engaged financial advisors at Goldman Sachs to "engage with interested parties," suggesting that Kohl's remained open to a sale.

65.     Also in the 2/4/22 8-K, Kohl's announced it nevertheless had adopted a poison pill, stating:

Kohl's also announced today that it has adopted a limited-duration shareholder rights plan, which is effective immediately and which is scheduled to expire on February 2, 2023. The rights plan has been adopted in order to ensure that the Board of Directors can conduct an orderly review of expressions of interest, including potential further engagement with interested parties. The rights plan does not preclude the Board from considering an offer that recognizes the value of the Company.

15

66. But a poison pill made little, if any, financial sense in this situation. As Law360 noted in its article "Kohl's Says $9B Takeover Bid Is Too Low, Adopts Poison Pill," "Poison pills are typically put in place to fend off buyers seeking to try a hostile takeover of a business at a low valuation." This was not the case here. The reported offers represented more than a 30% premium to the pre-offer share price.

67. In reality, the Board adopted the poison pill to ward off any unsolicited offers (no matter how favorable), rather than protecting the rights of shareholders, who may have benefitted from other, higher offers or increased competition in the bidding process. Indeed, the Board had no intention of accepting any offer. The Board even adopted the so-called "shareholder rights" plan without submitting it for approval at the 2022 Shareholder Meeting, further suggesting that the plan was adopted to protect the Board, not shareholders.

68. Moreover, allowing prospective buyers to conduct due diligence during this period would have brought to light the problems plaguing Kohl's, such as inventory issues and lower sales, and a resultant weakened financial position (as would be disclosed at the end of the quarter).

69. On March 7, 2022, Kohl's held its "Investor Day." Despite previous representations, management did not discuss any potential sale of the Company. Investors reacted negatively to the Company's Investor Day, with the stock price falling approximately 13%, from $58.77 per share at close of market on Friday, March 4, 2022 to $51.15 per share at close on Monday, March 7, 2022, about a 13% decline.

70. On March 21, 2022, Kohl's filed with the SEC on Form 8-K a press release "regarding the Board of Directors' ongoing review of expressions of interest in acquiring the Company," which stated only that:

> The Board acknowledged receipt of multiple preliminary indications of interest. The proposals received are non-binding and without committed financing. The

Board has authorized Goldman Sachs to coordinate with select bidders who have submitted indications of interest to assist with further due diligence so that they have the opportunity to refine and improve their proposals and include committed financing and binding documentation.

71.     The Board offered no other information, such as the firms involved or offer values.

72.     On April 13, 2022, Kohl's filed with the SEC on Form 14(a) the transcript of a video message Individual Defendant Gass sent to Kohl's employees, in which she stated "we've asked selected bidders to further refine their offers and to secure financing. They are doing a lot of diligence and homework, and we have provided access to thousands of documents and lots of data to help facilitate this process."

73.     In other words, Kohl's announced that several potential acquirers had moved on to the due diligence phase—a crucial late-stage step in the acquisition process—less than a month before the contested 2022 Shareholder Meeting. However, as later events revealed, Kohl's did not give the bidders access to meaningful information about its poor Q1 2022 financial results, which would have resulted in the bidders withdrawing or lowering their bids.

74.     On April 29, 2022, Kohl's published and filed with the SEC on Form 14(a) a press release with a letter from Board Chairman Individual Defendant Boneparth ("4/29/22 14(a)").  The 4/29/22 14(a) stated "[s]elect bidders who have put forward preliminary, nonbinding proposals have been given access to a data room containing over 55,000 documents with more than 550,000 pages and they and their representatives have had due diligence meetings with management" and further that "This Board has been conducting a robust and thorough process and keeping this Board in place will ensure the process is not disrupted or hindered. Your Board's focus throughout this process is choosing the path that maximizes shareholder value."  With this statement, Individual Defendant Boneparth sought to imply that the Board was actively pursuing a sale and that changes to the Board would "disrupt" or "hinder" the process.

75.     Macellum published letter in response to shareholders on May 9, 2022, just a few days before the Shareholder Meeting, which was also filed with the SEC on Form 14(a) in which it disputed Kohl's claims concerning disruption in the 4/29/22 14(a), but it was too late.  On May 11, 2022, Kohl's filed with the SEC an announcement on Form 8-K that shareholders re-elected the Company's proposed 13 Board members.

76.     One week later, on May 18, 2022, Kohl's filed a Form 8-K with the SEC announcing that two of its top executives, Chief Marketing Officer Greg Revelle and Chief Merchandising Officer would be departing the Company—facts that the Board undoubtedly knew before the 2022 Shareholder Meeting, given, for example, that Howe was named President of DSW Designer Shoe Warehouse and Executive VP of Designer Brands just two days later.  Nevertheless, the Board withheld this information, to, among other things, prevent any negative news from jeopardizing the Board in the proxy battle.

77.     On May 19, 2022, Kohl's released its (disappointing) Q1 2022 financial results in the 5/19/22 8-K.  Kohl's cut its full-year net sales outlook to be flat to up to 1% from its previous guidance of a 2-3% rise, and on an adjusted basis, the Company earned 11 cents per share, missing estimates by seventy cents. The Company also lowered its full year adjusted earnings forecast to between $6.45 and $6.85, down from $7.00 to $7.50. Kohl's also reported that its total revenue for the quarter dropped from $3.8 billion to $3.7 billion year over year, and its operating income collapsed by about 70% in the first quarter to $82 million.

78.     Also on May 19, 2022, Kohl's held its earnings call with analysts ("5/19/22 Earnings Call"). Individual Defendant Gass began the call by stating: "Before we share details on Q1 results and long-term strategy, I want to acknowledge the much broader context of this past quarter. Over the past 3 months, Kohl's has been at the center of an unusual amount of attention

and speculation . . . At this point, we have formally communicated to the multiple parties in our process the specific procedures for the submission of actionable bids due in the coming weeks." There was no further discussion of a sale.

79.     Also on the 5/19/22 Earnings Call, Individual Defendant Gass called Q1 "a challenging few months," that were "below our expectations," citing several factors including inflation, stimulus checks issued during Q1 2021 (but not in Q1 2022) and bad weather in key markets. CFO Timm additionally explained that, due to Kohl's previously touted aggressive buying and low sales in the previous quarter, the Company was now over-inventoried, with seasonal and holiday inventory arriving too late to be saleable. This forced the Company to use a pack-and-hold strategy on the out-of-season inventory, meaning that there would be no return on investment on substantial inventory until the following year.

80.     Notably, CFO Timm stated that Kohl's sales "considerably weakened in April . . . which resulted in a 5% decrease in net sales to last year," demonstrating that Kohl's management knew about negative sales trends long before the contested 2022 Shareholder Meeting, yet gave no indication to the market. Despite this report, Kohl's stock price increased slightly after the 5/19/22 Earnings Call. However, Deutsche Bank noted that "we believe the stock is seeing support today given the company plans to consider 'actionable bids' over the coming weeks."

81.     After market close on May 19, 2022, the New York Post published "Kohl's sales process is a 'disaster': sources"[1] ("5/19/22 NYP Article"). The 5/19/22 NYP Article, citing confidential sources, stated "[d]ismal financial results at Kohl's have raised concerns that the company's auction to sell itself will be a bust – even as management continues to tout the strong interest by potential suitors." Additionally, a source described as "close to the sales process"

---

[1] https://nypost.com/2022/05/19/kohls-sales-process-is-a-disaster-sources/

further reported: "'I don't believe there will be any acceptable bids offered now' . . . enthusiasm for the deal has likely been extinguished . . .in part because of a lack of transparency from Kohl's. Last week, Kohl's won a proxy fight to replace 10 of its directors. But they might not have affirmed the board had they known about the company's most recent performance, sources said."

82. Again citing a source "close to the sales process" the 5/19/22 NYT Article stated, "[b]asically the company knew their results stunk and they didn't tell anyone and they got the shareholder vote for their board of directors." Finally, the 5/19/22 NYT Article stated that the Board likely had no intention of selling the Company: "sources tell The Post the Wisconsin-based company may be privately rooting for an outcome in which bidders fade away – despite the public image management has put forward."

83. On May 20, 2022, Macellum issued a press release titled "Macellum Issues Statement Regarding the Kohl's Board's Apparent Breach of Fiduciary Duty and Failure to Disclose Material Information Prior to 2022 Annual Meeting." The press release stated:

> It was alarming to learn yesterday that the current Board appears to have withheld material information from shareholders about the state of Kohl's in the lead-up to this year's pivotal annual meeting. We believe all of the Company's shareholders should feel betrayed and outraged by the fact that the quarter's massive earnings miss, reduced guidance and the imminent departures of two senior executives, who presumably supported the development of Kohl's' three-year strategy released in March 2022, were not disclosed prior to last week's annual meeting.

> \*     \*     \*

> If any of the current directors were aware of this material information prior to the annual meeting, their involvement in any decision to withhold the news prior to a monumental shareholder vote suggests to us a clear breach of fiduciary duty."

84. The partial revelation of the Board's scheme to withhold material information from stockholders in order to maintain control of the Company caused Kohl's share price to fall approximately 13%, from $45.04 per share at close on May 19, 2022 to $39.20 per share at close

on May 20, 2022 (lowest since January 2021), on unusually heavy trading volume. However, the likelihood that a sale was on the horizon kept the share price artificially inflated.

85.     Facing potential claims of breach of fiduciary duty by suddenly dismissing all potential bids, on June 6, 2022, after market close, Kohl's issued and filed with the SEC on Form 8-K an announcement that it had entered "exclusive negotiations" with holding company FRG to sell at $60.00 per share and that there would be a three-week period for FRG and its financing partners "to finalize due diligence and financing arrangements and for the parties to complete the negotiation of binding documentation."

86.     On this news, the Company's share price rose approximately 9%, from $42.12 per share at close on June 6, 2022 to $45.59 per share at close on June 7, 2022, on unusually high trading volume.

87.     On June 22, 2022, shortly before the three-week exclusive negotiation period with FRG expired, CNBC published an article titled "Franchise Group considers lowering Kohl's bid closer to $50 a share from about $60, source says"[2] ("6/22/22 CNBC Article"). Citing a confidential source, the 6/22/22 CNBC Article reported that FRG was "actively considering whether buying Kohl's is the best use case of Franchise Group's capital."

88.     The Company's share price declined approximately 8.8% from $42.33 per share June 21, 2022 at close to $38.61 on June 22, 2022 at close, on unusually heavy trading volume.

89.     Finally, on July 1, 2022, Kohl's filed with the SEC on Form 8-K a press release announcing that the Board had "unanimously determined to conclude its strategic review process," continuing "Despite a concerted effort on both sides, the current financing and retail environment

---

[2] https://www.cnbc.com/2022/06/22/franchise-group-considers-lowering-kohls-bid-closer-to-50-a-share-from-60.html

created significant obstacles to reaching an acceptable and fully executable agreement. Given the environment and market volatility, the Board determined that it simply was not prudent to continue pursuing a deal" ("7/1/22 8-K").

90.     With the 7/1/22 8-K, the market finally learned what the Board and management knew all along—regardless of potential benefit to shareholders, there would be no sale.

91.     On this news, Kohl's share price fell approximately 20%, from $35.69 per share at market close on June 30, 2022, to $28.68 per share at market close on July 1, 2022.

92.     Notably, a sale price of $53/share, which Kohl's deemed unacceptable, would have been a 46% premium to this post-rejection sale price.

93.     Events occurring after the Relevant Period shed further light on Defendants' fraudulent scheme and course of conduct.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS**

94.     Kohl's issued myriad false and misleading statements concerning its true condition beginning, at least, in 2020, via Securities and Exchange Commission ("SEC") filings and earnings calls with Wall Street analysts centered on its (a) Strategic Plan and (b) sale to a third-party.

***False and Misleading Statements Regarding Strategic Plan***

95.     The Relevant Period begins on October 20, 2020, when Kohl's announced (but did not file with the SEC) its Strategic Plan initiative. Specifically:

> Kohl's today shared the company's new strategic framework with the investment community, including new initiatives to position the company for long-term success. As part of its strategy, Kohl's has set a new vision: *to be the most trusted retailer of choice for the active and casual lifestyle.*  The strategy, informed by customer insights, is designed to drive top-line growth and expand operating margin, supported by disciplined capital management and an agile organizational culture, to create long-term shareholder value.
>
> "Kohl's is uniquely positioned to be the retailer of choice for the active and casual lifestyle for the entire family with our accessible and aspirational brand portfolio,

seamless omnichannel experience, and industry-leading loyalty program. We are leaning into categories where we have demonstrated momentum and will drive more growth opportunities into the future. The recent environment has accelerated our path forward and presented a unique opportunity to capture market share from retail industry disruption," said Michelle Gass, Kohl's chief executive officer. "We have shown our ability to navigate through the COVID-19 crisis by focusing on customer and associate safety, operational efficiency and ensuring our financial resiliency. We are well positioned to both continue to manage our business through the pandemic and to take full advantage of a brighter future ahead."

The new strategy will build on Kohl's strong foundation of 65 million customers, industry-leading loyalty and charge card programs, more than 1,160 stores, and large and growing digital business.

To accomplish the vision to be the most trusted retailer of choice for the active and casual lifestyle, Kohl's will focus on three key areas that will drive top-line growth. Be the **destination for active, casual and beauty for the entire family from the most trusted brands, always delivering quality and discovery**.
This includes expanding in Active and Outdoor categories, reigniting growth in the Women's category, building a sizable Beauty business, and driving category productivity and inventory turn. The company also seeks to capture market share from retail industry disruption.

**Lead with loyalty and value through a best-in-class rewards program**, including Kohl's Cash, Kohl's Rewards and Kohl's Charge Card. This includes driving productivity through deeper engagement with customers and continuing to deliver personalized experiences.

**Offer a differentiated omnichannel experience that is easy and inviting, no matter how customers want to shop**. This includes leveraging Kohl's healthy store base in an evolving landscape, modernizing the store experience, continuing digital growth, and further enhancing omnichannel capabilities.
The company is also focused on increasing profitability with a goal of expanding its operating margin to 7% to 8%.

Efforts include **an end-to-end supply chain transformation, sourcing optimization and SG&A expense efficiency** across store labor, marketing and technology.

In addition, the company will leverage its **core discipline of operational excellence**, which resulted in more than $250 million of cost savings from 2017 through 2019 and more recently, in 2020, expense savings of more than $100 million on an annualized basis.
Kohl's has a track record of disciplined financial management and this will continue to be an important focus. The company is committed to prudent balance sheet management with a long-term objective of sustaining its investment grade

rating, a status it has held for more than two decades. The company is also committed to a long-term capital return program and this follows a long history of returning significant capital to shareholders.

The company's strategic efforts are supported by its strong organizational focus. Kohl's will continue to foster a workplace culture of agility, accountability and experimentation, while also further amplifying its efforts on diversity and inclusion, and environmental, social and corporate governance (ESG) stewardship.

(Emphasis in original.)

96.     On November 17, 2020, Kohl's announced its fiscal Q3 2020 financial results via

Form 8-K with the SEC ("11/17/20 8-K"). The 11/17/20 8-K stated, in relevant part:

"We entered the holiday season well-positioned and prepared to serve our customers with more omnichannel conveniences in place to deliver the great experience they always expect from Kohl's. As we look ahead, we are incredibly focused on executing against our new strategic framework, which represents our greatest opportunity to drive long-term sales and profit growth and create shareholder value in the coming years," said Gass. "In addition, through disciplined capital management we plan to reinstate a dividend during the first half of 2021."

97.     Also on November 17, 2020, Kohl's held an earnings call with investors and

analysts to discuss the Company's fiscal third quarter 2020 results (the "Q3 2020 Earnings Call"),

during which Individual Defendant Gass stated, in relevant part:

Let me now transition to how we're planning the business beyond this year and discuss our new strategic framework. Last month, we shared an updated investor presentation introducing this new framework. We are excited to share more color on this new strategy with all of you today.

Our vision is to be the most trusted retailer of choice for the Active and Casual lifestyle. We are uniquely positioned to deliver against this vision. We serve the entire family. We offer an accessible and aspirational brand portfolio. We provide a seamless omni-channel experience and we have a leading loyalty program. To bring this vision to life and create long-term shareholder value, we have four key areas of focus: driving top line growth, expanding operating margin, disciplined capital management, and an agile accountable and inclusive culture.

I am confident in our organization's ability to deliver on these four focus areas. With respect to our stated operating margin goal of 7% to 8%, it's important to remember that we delivered this margin in 2017 and 2018. With a modest level of growth,  our  transformational  margin  initiatives  already  underway  and  our

continued focus on operational excellence, we are confident that we can return to this level.

98. On December 3, 2020, Kohl's filed its Quarterly Report on Form 10-Q with the SEC, in which the Company reported its financial and operating results for the quarter ended October 31, 2020 (the "Q3 2020 10-Q"). Regarding strategy, the Q3 2020 10-Q stated, in relevant part:

> During the quarter we introduced our new strategic framework. Our vision is to be "the most trusted retailer of choice for the active and casual lifestyle." We are uniquely positioned to deliver against this vision by serving the entire family, offering an accessible and aspirational brand portfolio, providing a seamless omnichannel experience, and having a leading loyalty program.
>
> Our strategy is designed to create long-term shareholder value and we have four key areas of focus: driving top line growth, expanding operating margin, disciplined capital management, and an agile, accountable, and inclusive culture.
>
> Driving Top Line Growth
> We are focused on driving top line growth by being the destination for the active and casual lifestyle, leading with loyalty and value, and offering a differentiated omnichannel experience. As the destination for the active and casual lifestyle, our initiatives include expanding our active and outdoor business to at least 30% of net sales, reigniting growth in our women's business, building a sizable beauty business, driving category productivity and inventory turn, and capturing market share from the retail industry disruption. Our loyalty and value efforts include simplifying the value we deliver to our customers and maintaining our industry leading loyalty program, which includes Kohl's Rewards and the Kohl's Card. We will also continue to offer a compelling and differentiated omnichannel experience, through modernizing our stores and enhancing our digital experience, as well as continuing to invest in our omnichannel capabilities.
>
> Expanding Operating Margin
> We have established a goal of expanding our operating margin to 7% to 8%. To accomplish this goal, we are targeting both gross margin improvement and selling, general, and administrative expense leverage. Our gross margin initiatives include inventory management and increasing inventory turn, optimizing our promotional strategies, and transforming our supply chain. Our selling, general, and administrative expense initiatives include leveraging our operational excellence discipline with a focus on driving greater efficiency across stores, marketing, technology, and corporate expenses.
>
> Disciplined Capital Management

We are committed to disciplined capital management and we will continue to manage the business with a long-term objective of sustaining an Investment Grade rating. We have a long history of strong cash flow generation, investing in our business, and returning significant capital to shareholders, all of which will continue to remain important in the future.

99.     The Q3 2020 10-Q further stated that the Kohl's "disclosure controls and procedures [were] effective at the reasonable assurance level."

100.    On February 4, 2021, Kohl's filed with the SEC on Form 8-K a press release announcing the Company's fourth fiscal quarter 2020 ("Q4 2020") results ("2/4/21 8-K"). The 2/4/21 8-K stated, in relevant part:

"As we carry this momentum into 2021, we are confident that our key strategic initiatives will accelerate our top line growth and expand our operating margin. Our partnership with Sephora will launch this Fall in 200 stores and online, commencing a multi-year buildout that will drive significant growth for Kohl's," said Gass. "We look forward to sharing more on this and our other initiatives, as well as providing more detail on our path to 7% to 8% operating margin, on our upcoming earnings call in March."

101.    On March 2, 2021, Kohl's filed with the SEC on Form 8-K a press release announcing the full year 2020 results. The press release stated, in relevant part:

"After an extraordinary year managing through the pandemic, we ended the year in a very solid financial position, and we enter 2021 with strong momentum. We are pleased with the progress we are making against our strategic initiatives and we are set up to deliver a multi-year improvement in sales and operating margin. Several newly announced initiatives will come to life for our customers in the year ahead, most importantly the launch of our Sephora partnership in August," said Michelle Gass, Kohl's chief executive officer.

102.    Also on March 2, 2021, Kohl's held an earnings call with investors and analysts to discuss the Company's Q4 2020 results (the "Q4 2020 Earnings Call"). During the Q4 2020 Earnings Call, Individual Defendant Gass stated, in relevant part:

We are executing with a clear strategic plan to continue building on the momentum in our business, with an intense focus on improving our profitability. We have delivered strong initial progress against our strategy in the past two quarters, and we are positioned to deliver a multiyear improvement in sales and operating margin.

26

*    *    *

We are also making great progress in our efforts to expand our operating margin. Our fourth quarter gross margin performance and expense discipline highlight the traction we have already made, as we look to make further progress against our strategic goal. Importantly, these are not one-time benefits, but rather fundamental changes we are making in our operation that will drive sustainable improvements to our business.

103. On May 20, 2021, Kohl's filed with the SEC on Form 8-K a press release announcing the Company's first fiscal quarter of 2021 ("Q1 2021") financial results ("5/20/21 8-K"). The 5/20/21 8-K stated, in relevant part:

"We are very pleased with our strong start to 2021 with both sales and earnings materially exceeding expectations. Along with a favorable consumer spending backdrop, we continue to see our key strategic initiatives gain traction and resonate with customers. We saw momentum build through the quarter, especially in our stores where we continue to elevate the experience. We are eagerly preparing for the upcoming launch of our Sephora partnership as well as the introduction of several new exciting brands this fall," said Michelle Gass, Kohl's chief executive officer.

"We are positioned to capitalize on growth opportunities during the balance of 2021 and remain firmly on track to achieving our 2023 strategic goals. Based on our first quarter results, we are raising our full year 2021 guidance," said Gass.

104. Also on May 20, 2021, Kohl's held an earnings call with investors and analysts to discuss the Company's Q1 2021 results (the "Q1 2021 Earnings Call"). During the Q1 2021 Earnings Call, Defendant Gass stated, in relevant part:

We are very pleased with our strong start to 2021 with both sales and earnings materially exceeding expectations. Our key strategic initiatives continue to gain traction and resonate with customers, and we capitalized on a favorable consumer spending backdrop during the period.

*    *    *

We are making significant progress on our vision of becoming the most trusted retailer of choice for the active and casual lifestyle. Since launching our strategy last October, we have shown strong sequential improvement in our performance

and have announced several important new strategic partnerships that will accelerate our momentum.

We remained firmly on track to achieving our 2023 strategic goals, and we'll take a big step forward in our pursuit this year. As we will discuss later in the call, based on our first quarter results, we are raising our full year 2021 guidance.

105. On June 3, 2021, Kohl's filed its Quarterly Report on Form 10-Q with the SEC reporting its financial and operating results for the quarter ended May 1, 2021 ("Q1 2021 10-Q"). The Q1 2021 10-Q touted the Company's decision to enter into the Strategic Plan as in prior filings. The Company further stated in the Q1 2021 10-Q "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level." Appended to the Q1 2021 10-Q as exhibits were SOX Certifications signed by Individual Defendant Gass and CFO Timm.

106. On August 19, 2021, Kohl's filed with the SEC on Form 8-K a press release announcing the Company's second fiscal quarter 2021 ("Q2 2021") financial results ("8/19/21 8-K"). The 8/19/21 8-K stated, in relevant part:

"Our performance in the second quarter marked another important step in further establishing Kohl's as the leading destination for the active and casual lifestyle. We delivered record second quarter earnings with sales and margins materially exceeding expectations. As pleased as we are with our ongoing strategic progress, much of our opportunity is still ahead of us. We are on the eve of launching several transformational partnerships that will drive sustainable growth for years to come," said Michelle Gass, Kohl's chief executive officer.

107. On August 19, 2021, Kohl's issued and filed with the SEC on Form 8-K a press release reporting the Company's financial results for the second fiscal quarter of 2021 ("8/19/21 8-K"). The 8/19/21 8-K quotes Individual Defendant Gass as follows: "Our performance in the second quarter marked another important step in further establishing Kohl's as the leading destination for the active and casual lifestyle. We delivered record second quarter earnings with sales and margins materially exceeding expectations. As pleased as we are with our ongoing strategic progress, much of our opportunity is still ahead of us."

108. Also on August 19, 2021, Kohl's hosted an earnings call to discuss the 8/19/21 8-with analysts ("8/19/21 Earnings Call") during which Gass stated "We delivered record Q2 earnings of $2.48 per diluted share as both sales and margins, materially exceeded our expectations," again attributing the Company's results to the Strategic Plan as follows:

- "This underscores our confidence in the future and commitment to creating shareholder value, and we still ended in a very strong cash position of $2.6 billion. As pleased as we are with our ongoing strategic progress, much of our opportunity is still ahead of us.";

- "Since launching our strategy last October, our organization is executing a clear plan to build sales momentum with an intense focus on improving our profitability.";

- "As evident in our results, we are already seeing the benefits of our strategic efforts, which have positioned us to achieve many of our 2023 goals this year, well ahead of plan.";

- "Our strategy is working and the favorable industry environment has only amplified our performance."; and

- "We debuted our strategy last October in the midst of the pandemic, recognizing a significant opportunity to transform the business and drive more sustainable and profitable growth well into the future. . . . Everything that we envisioned with this new strategy is playing out as planned, and in many cases, sooner than we expected. We are now at an important milestone in our strategic journey."

109. During the 8/19/21 Earnings Call, CEO Timm additionally stated:

- "I want to start by echoing, the results are truly reflective of our strategy work.";
- "[E]xecuting against our strategy, we have structurally improved our margin efficiency and are confident in our ability to sustain the recent improvement.";
- "In summary, we are really pleased with our second-quarter results and the progress we are making with our strategy. Our efforts are gaining traction."; and
- "[W]e did take advantage of a great market, but I think the big thing is our strategies are working."

110.    On September 2, 2021, Kohl's filed a Quarterly Report on Form 10-Q with the SEC, reporting its financial and operating results for the quarter ended July 31, 2021 ("Q2 2021 10-Q"). The Q2 2021 10-Q again touted the Company's Strategic Plan.  Further, the Q2 2021 10-Q stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level" and contained SOX Certifications signed by Individual Defendant Gass and Timm.

111.    On November 18, 2021, Kohl's filed with the SEC on Form 8-K a press release announcing its third fiscal quarter 2021 ("3Q 2021") financial results ("11/18/21 8-K"). The press release stated, in relevant part:

> "Our strategic efforts to transform Kohl's into the leading destination for the active and casual lifestyle continue to build momentum. We delivered another quarter of record earnings with both sales and margins exceeding expectations. During the quarter, we drove accelerated growth in Active and successfully launched several new brand partnerships, including the initial rollout of 200 Sephora at Kohl's stores, which are off to a great start," said Michelle Gass, Kohl's chief executive officer.
> "All of the pieces of our strategy are coming together and we remain incredibly confident in the future of our business. We are raising our full year 2021 guidance and continue to accelerate our share repurchase activity, reinforcing our commitment to driving shareholder value," said Gass.

112.    Also on November 18, 2021, Kohl's held an earnings call with investors and analysts to discuss its Q3 2021 results ("11/18/21 Earnings Call"). During the Q3 2021 Earnings Call, Individual Defendant Gass stated, in relevant part:

> Our strategic effort to transform Kohl's into the leading destination for the active and casual lifestyle continues to gain traction. We delivered another outstanding performance in the third quarter, continuing our momentum from the first half of the year.
>
> *        *        *
>
> All of the pieces of our strategy are coming together and we remain incredibly confident in our future. As we look ahead, we are focused on building on this year's success. We are positioned to exceed most of our 2023 goals this year and we look

forward to sharing an updated financial framework at our Investor Day on March 7, 2022.

113.    During the 11/18/21 Earnings Call, CFO Timm additionally stated:

[W]e can't be more pleased with the progress that we made against our strategy this year. Obviously, this performance in 2021 exceeded our expectations. And I didn't point out, our guidance really puts us in a place that we're going to exceed our 2023 goals this year. We believe our business has momentum. We have a lot of really great new initiatives that just literally set the end of Q3, and we're going to continue to build on that which gives us really great confidence on us being able to continue on this strategic mission of repositioning ourselves to grow more profitably going forward. So, you have our commitment for growth.

114.    Discussing the holiday shopping season on the 11/18/21 Earnings Call, Gass stated "we've got terrific response from our customers. And we saw it across the board, but in particular, we're **excited that a lot of our key strategies, where we leaned in,** especially on inventory like active, they are really responding." CFO Timm stated: "we are really pleased with our third quarter results and the progress we're making against our strategy. As you've heard today, our business has clear momentum, and we look to build on it as we close 2021 and enter the new year" and "Michelle [Gass] and I and the leadership team have incredible confidence in our strategy."

115.    Gass and Timm also indicated that one of the strongest headwinds of the quarter—difficulty in sourcing inventory—was actually an intentional part of the Strategic Plan. Gass stated: "we planned inventory to be down this year as compared to 2019, aligned with our strategy to drive margins and turnover." Timm stated: "We're in the midst of a transformation here. And so, when we exited 10 brands, that took a lot of inventory out of the ecosystem." Gass further explained: "women's is clearly very important to us. We embarked in the biggest, boldest transformation as Jill was just saying, we plan the year down. So, inventory being down 25% for the entire business, women's more so than that. With the strategy to chase, as we saw, really what were going to be the outstanding winners, we got lots of them."

31

116.     On December 2, 2021, Kohl's filed its Quarterly Report on Form 10-Q with the SEC, reporting its financial and operating results for the quarter ended October 30, 2021 ("Q3 2021 10-Q"). The Q3 2021 10-Q again boasted about the Company's Strategic Plan as before. Further, the Q3 2021 10-Q stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level" and contained SOX Certifications signed by Individual Defendant Gass and Timm.

117.     On March 1, 2022, Kohl's filed with the SEC on Form 8-K a press release announcing the Company's fourth fiscal quarter ("Q4 2021") and full year 2021 financial results ("3/1/22 8-K"). The 3/1/22 8-K stated, in relevant part:

> "In 2021, we delivered all-time record earnings per share, significantly ahead of our expectations. Our operating margin of 8.6% exceeded our 2023 goal two years ahead of plan, a direct result of our efforts to restructure the business to be more profitable. We remain extremely confident in the future growth and cash flow generation of our business, and in 2022 will build on our momentum as we further scale key initiatives such as Sephora," said Michelle Gass, Kohl's chief executive officer.

118.     Also on March 1, 2021, Kohl's held an earnings call with investors and analysts to discuss its Q4 2021 results ("Q4 2021 Earnings Call"). During the Q4 2021 Earnings Call, Individual Defendant Gass stated, in relevant part:

> We achieved record earnings per share and successfully launched several key strategic initiatives that position us to drive growth for years to come. I am proud of how our team has remained agile and focused in a challenging environment during the past couple of years. We've proven that Kohl's is an incredibly strong and resilient company and has a very bright future.
>
> *          *          *
>
> Let me now provide an update on our strategy and key 2022 initiatives. We made important progress in our pursuit of becoming a leading destination for the active and casual lifestyle in 2021. Core to this strategy is our product, building a meaningful beauty business, continuing to grow our Active category, improving Women and introducing iconic relevant brands to further differentiate our brand

portfolio. Many of these major initiatives were launched late in 2021 and are just starting to scale, with most of the upside opportunity still ahead of us.

*     *     *

We accomplished a great deal strategic and financially as we highlighted today. Given the strong growth initiative in front of us, we have great confidence in the future. We are focused on driving shareholder value and are reinforcing our commitment to returning capital to shareholders. We are doubling our dividend and our Board has approved a $3 billion share repurchase authorization, with a plan to repurchase at least $1 billion in shares in 2022.

119.    On March 7, 2022, Kohl's filed with the SEC on Form 8-K a press release entitled "Kohl's Provides Key Updates on Strategic Growth Initiatives and Financial Plan at Investor Day" ("3/7/22 8-K").  The 3/7/22 8-K stated, in relevant part:

"Kohl's is undergoing a significant transformation of our business model and brand to be the retailer of choice for the Active and Casual lifestyle. We have fundamentally restructured our business to drive sustainable and profitable growth, while providing a strong return to shareholders," said Michelle Gass, Kohl's chief executive officer. "We have laid the foundation for our winning strategy and have started to implement key initiatives that will scale and accelerate our growth in the years ahead. We delivered record EPS in 2021 and achieved our operating margin goal two years ahead of schedule, reflecting our progress to drive more profitable growth. The initiatives we are announcing today, including plans to drive the Sephora business to $2 billion, are further positioning us for long-term value creation."

120.    On March 17, 2022, Kohl's filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended January 29, 2022 ("2021 10-K"). The 2021 10-K contained a substantively similar description of the Company's Strategic Plan as discussed, *supra*. Further, the 2021 10-K stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level" and SOX Certifications signed by Individual Defendant Gass and CFO Timm, attesting that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

121.    On April 13, 2022, Kohl's filed with the SEC on Form 14(a) the "Transcript of a Video of Michelle Gass Sent to Associates on April 13, 2022." The video purported to address "two discreet, yet connected issues that we're currently navigating": "an activist campaign that will culminate in a shareholder vote on May 11" and "an evaluation of what we call, expressions of interest – or potential bidders – who are exploring the opportunity to buy Kohl's." Gass stated, "Before we get into the details of all of this, let me just make one thing really clear – we are a very healthy company. We have a great strategy in place, we just posted record results for 2021, and we are in the midst of scaling one of the biggest and most transformational initiatives that this company has ever had, with Sephora." She further stated, "The board is doing its job in representing our shareholders to evaluate alternatives and other options – and all of those explorations are being held up against the current strategy that we're executing. The plan we're executing is very powerful and it will deliver substantial value to our shareholders – so that's a high bar that the board is looking at when evaluating these alternatives."

122.    On April 21, 2022, Kohl's filed with the SEC on Form 14(a) a presentation titled "The Right Team to Maximize Shareholder Value" ("4/21/22 14(a)"). The 4/21/22 14(a) discussed several "initiatives" that were part of the strategic plan, including making Kohl's a "destination for the active & casual lifestyle." According to the 4/21/22 14(a), these initiatives were "Driving sustainable Low-Single-Digits % Sales Growth" and would "support sales growth in 2022 and beyond." Further, the presentation stated Kohl's had "Fundamental business model improvements in place, driving a consistent 7% to 8% operating margin"; "Kohl's is well-positioned to deliver continued robust EPS growth…Combination of sales growth and solid margins, coupled with commitment to share repurchases, drives mid-to-high single digits % EPS growth"; and "We are

confident in our ability to navigate ongoing margin pressure "from cost inflation, higher freight expense, wage investments, and increasing digital penetration."

123.    On April 29, 2022, Kohl's filed with the SEC on Form 14(a) a letter to shareholders from incoming Chairman Boneparth ("4/29/22 14(a)"). In the Form 14(a), Boneparth encouraged shareholders to vote for Kohl's existing directors stating: "We are also continuing to deliver on the strategy we unveiled in October 2020, which helped us achieve record EPS last year and allowed us to double our annual dividend to $2 per share for 2022."

124.    Finally, on May 11, 2022, Kohl's published a press release titled "Kohl's Shareholders Re-elect All Directors at 2022 Annual Meeting." The press release quoted Boneparth as saying: "We are especially thankful to Kohl's associates, who have ***continued to execute on our strategy*** and focus on customers during this process. Kohl's has a bright future ahead."

125.    The foregoing statements were false and misleading when made because they failed to disclose that: (a) Kohl's could not achieve its stated goals even if it executed the Strategic Plan perfectly; (b) the Company's representations concerning its successful execution of the Strategic Plan were overstated; (c) Kohl's had deficient disclosure controls and procedures, internal control over financial reporting, and corporate governance mechanisms, such that, among other things, Board was able to and did withhold material information from shareholders as above in the lead-up to the Company's annual meeting; and that (d) the foregoing, when inevitably revealed, was likely to and did have a material negative impact on Kohl's financial condition and reputation. These results were at odds with the Defendants' representations regarding the successful execution of the Company's Strategic Plan, which was purportedly poised to drive top-line growth and position the Company for long-term success.

***False and Misleading Statements Concerning the Sale of the Company***

126.     In the 1/18/22 Macellum Letter, Macellum stated, "[We] suspect[] that there are a number of well-capitalized financial sponsors interested in Kohl's. We also have heard that the Board and its representatives have been approached and rebuffed overtures from credible buyers. This is unacceptable and, if true, would seem to constitute a meaningful breach of the Board's fiduciary responsibilities."

127.     In response to the 1/18/22 Macellum Letter, Kohl's issued a press release the same day, stating, "We have continued to engage with Macellum since the settlement and are disappointed with the path they have taken and the ***unfounded speculation*** in their announcement and letter" ("1/18/22 Press Release"). The 1/18/22 Press Release additionally stated that the Board "regularly works with specialized advisers to evaluate paths that have the potential to create long-term value" and that the Board would "continue to aggressively pursue the best interests of all shareholders."

128.     On Monday, January 24, 2022, Kohls did an about-face regarding Macellum's purported "unfounded speculation" that it had received offers in 1/24/22 Press Release, stating:

> Kohl's . . . today confirmed that it has received letters expressing interest in acquiring the Company. The Kohl's Board of Directors will determine the course of action that it believes is in the best interests of the Company and its shareholders. Shareholders are not required to take any action at this time. Kohl's does not intend to further comment publicly on these matters unless it determines it is in the best interests of shareholders to do so.

129.     On this news, Kohl's share price rose approximately 30%, from close on Friday, January 21, 2022.

130.     On February 4, 2022, Kohl's filed the 2/4/22 8-K, which stated that the Company had rejected the bids because "the valuations indicated in the current expressions of interest which it has received do not adequately reflect the Company's value in light of its future growth and cash flow generation."

131. Kohl's statement in the 2/4/22 8-K was materially false or misleading and/or omitted information necessary to make it not misleading because the rejected bids were well-above Kohl's value. Before the Macellum Letter, the Company's share price was $47.77 per share. After Kohl's released its favorable financial results in the 11/18/21 8-K, analysts generally set price targets between $65-$75/share, but none set targets of $88 per share.

132. In fact, after news of the sale was announced, Guggenheim analysts wrote, "We believe a price between $70-$75 would be an acceptable takeout value for shareholders. The 37% premium offered last Friday appears credible and a sufficient starting point for consideration for a transaction, in our view."

133. However, the 2/4/22 8-K also stated: "The Board has designated its Finance Committee to lead the ongoing review of any expressions of interest . . .The Company and the Board have also engaged financial advisors, including Goldman Sachs and PJT Partners, and have asked Goldman Sachs to engage with interested parties." This statement indicated that the door which had opened when Kohl's announced it had received expressions of interest had not yet closed. The fact that the sale process would remain ongoing was further supported by the adoption of a "shareholder rights plan." The 2/4/22 8-K further explained, "The rights plan has been adopted in order to ensure that the Board of Directors can conduct an orderly review of expressions of interest, including potential further engagement with interested parties. The rights plan ***does not preclude the Board from considering an offer that recognizes the value of the Company***."

134. In the Company's 4/29/22 Form 14(a), Individual Defendant Boneparth stated "I believe it's crucial that you understand the effort your Board has put into overseeing Kohl's strategy . . . following the receipt of unsolicited bids earlier this year, your Board has designated its Finance Committee to lead a robust and intentional process to explore strategic alternatives to

maximize value with the assistance of Goldman Sachs. I can attest to the fact that this is a thorough, disciplined process. . . this Board has been conducting a robust and thorough process and keeping this Board in place will ensure the process is not disrupted or hindered."

135.    This statement was materially false or misleading, and/or omitted information necessary to make it not misleading, because, as described above, the "rights plan" (more commonly referred to as a "poison pill") was designed specifically to chill buyer interest in the Company and prevent any unsolicited bids—regardless of how high these bids may value the Company or how favorable such bids might be to shareholders. Additionally, in truth, Defendants rejected the offers and adopted the poison pill, not because of a low valuation, but in order to control the timing of any potential sale process in order to best serve their objective of retaining control over the Board and their high-level positions in the Company.

136.    The information in the 2/4/22 8-K was material to investors for two reasons. First, even though the initial bids had been rejected, the Press Release indicated that the sale process was ongoing, and the Board had put a framework in place to review offers in the future.  Second, the Press Release implied that, if Kohl's were to accept an offer, it would value the company at greater than $64/share, signaling that management believed the stock was worth more than this price. If Kohl's had not made such material misrepresentations in this 2/4/22 8-K, any inflation in the stock price due to the potential sale would have been removed, and the stock price would have declined. However, since Kohl's still indicated that the possibility of a sale was still imminent, the stock price moderately increased.

137.    On June 6, 2022, Kohl's issued and filed with the SEC on Form 8-K a Press Release, stating:

> Kohl's . . . announced today that following the receipt of final proposals, the Kohl's Board of Directors has entered into exclusive negotiations with Franchise Group,

Inc. ("FRG"), a holding company of a collection of market leading and emerging brands, for a period of three weeks in relation to FRG's proposal to acquire the Company for $60.00 per share. The purpose of the exclusive period is to allow FRG and its financing partners to finalize due diligence and financing arrangements and for the parties to complete the negotiation of binding documentation.

138.    These statements were materially false or misleading, and/or omitted material necessary to make them not misleading, because, as discussed extensively herein, the Board had no intention of actually selling the Company. Additionally, it was materially false or misleading to imply that the sale process would be "disturbed or hindered" if the Kohl's Board was not reelected at the 2022 Shareholder Meeting, as Macellum had vocally expressed its support for a sale of the Company, and, if anything, would have encouraged a more transparent sales process.

139.    These statements were further materially false or misleading, and/or omitted information necessary to make it not misleading, because, as described *supra,* the "rights plan" (more commonly referred to as a "poison pill") was designed specifically to chill buyer interest in the Company and prevent any unsolicited bids—regardless of how high these bids may value the Company or how favorable such bids might be to shareholders. Additionally, in truth, Defendants rejected the offers and adopted the poison pill, not because of a low valuation, but in order to control the timing of any potential sale process in order to best serve their objective of retaining control over the Board and their high-level positions in the Company.

*The Truth is Revealed*

140.    On May 19, 2022 Kohl's announced its disappointing Q2 2022 results, the failure of the Strategic Plan and that it was engaged in the potential sale of the Company, as follows:

Kohl's Reports First Quarter Fiscal 2022 Financial Results

- First quarter net sales and comparable sales decrease 5.2%
- First quarter diluted earnings per share of $0.11
- Updates full year 2022 financial outlook

• Board continues to run a robust process to explore all strategic initiatives to maximize value

MENOMONEE FALLS, Wis.—(BUSINESS WIRE)—May 19, 2022— Kohl's Corporation (NYSE:KSS) today reported results for the quarter ended April 30, 2022.

\*      \*      \*

"The year has started out below our expectations. Following a strong start to the quarter with positive low-single digits comps through late March, sales considerably weakened in April as *we encountered macro headwinds related to lapping last year's stimulus and an inflationary consumer environment*. We remain committed to our long-term strategy and are encouraged that our updated store experience, with Sephora at Kohl's shops, delivered positive comparable store sales across these 200 locations for the quarter. We continue to expect our business to improve as the year progresses, with growth in the second half as we benefit from the roll out of 400 additional Sephora stores, enhanced loyalty rewards and further investment in our stores," said Michelle Gass, Kohl's chief executive officer.

"*Regarding our review of strategic alternatives, we continue to engage with multiple interested parties*. We have formally communicated the specific procedures for the submission of actionable bids due in the coming weeks. We continue with our detailed diligence phase and are pleased with the number of parties who recognize the value of our business and plan," said Gass.

Updated 2022 Financial Outlook

The Company is updating its full year 2022 financial outlook to include the following:

• Net sales is now expected to be in the range of 0% to 1% as compared to the prior year
• Operating margin is now expected to be in the range of 7.0% to 7.2%
• Earnings per share is now expected to be in the range of $6.45 to $6.85, excluding any non-recurring charges

Process Update

*The Kohl's Board is thoroughly testing the Company's standalone strategic plan against potential alternatives* and has designated its Finance Committee to lead the ongoing review of expressions of interest. The Board engaged Goldman Sachs to conduct a broad process to explore strategic alternatives, which to date has included engagement with over 25 parties. Multiple bidders have been invited to a data room containing over 550,000 pages across over 55,000 documents, as well as meetings

with management. While preliminary, non-binding proposals have been received, further diligence is ongoing and the Board has requested fully-financed final bids to be submitted in the coming weeks. . .

(emphasis added).

141. Commenting on this news, then Chief Executive Officer ("CEO") Defendant Michelle Gass ("Gass"), stated, in relevant part, "[t]he year has started out below our expectations.

Following a strong start to the quarter with positive low-single digits comps through late March, sales considerably weakened in April as *we encountered macro headwinds related to lapping last year's stimulus and an inflationary consumer environment.*"

142. Then, on May 20, 2022, Macellum, "a long-term holder of nearly 5% of the outstanding common shares of Kohl's" issued the following statement:

Macellum [. . .] today issued the following statement regarding the Company and the Board:

**"This quarter's extremely disappointing results do not change the fact that Kohl's is a uniquely positioned retailer with tremendous long-term opportunities to increase sales, expand margins and produce superior earnings.** Based on our extensive analysis of Kohl's and the retail sector, we can say with great conviction that yesterday's results are simply a consequence of a weak Board and management configuration leading to a flawed strategic plan and an inability to execute. Under the right oversight and leadership that has sufficient expertise and a viable strategy, we firmly believe Kohl's will consistently deliver superior operating and financial results.

**It was alarming to learn yesterday that the current Board appears to have withheld material information from shareholders about the state of Kohl's in the lead-up to this year's pivotal annual meeting.** We believe all of the Company's shareholders should feel betrayed and outraged by the fact that the quarter's massive earnings miss, reduced guidance and the imminent departures of two senior executives, who presumably supported the development of Kohl's' three-year strategy released in March 2022, were not disclosed prior to last week's annual meeting. If any of the current directors *were aware* of this material information prior to the annual meeting, their involvement in any decision to withhold the news prior to a monumental shareholder vote suggests to us a clear breach of fiduciary duty. If any of the current directors *were kept in the dark and not aware* of this information prior to the annual meeting, we urge this faction of the Board to retain independent counsel and begin its own investigation to understand how select directors and shareholders were so grossly misled and what

recourse they have. Either way, Kohl's should immediately appoint three of our nominees – including a shareholder representative from Macellum – to the Board to replace three long-serving incumbents. Keep in mind that Institutional Shareholder Services, Inc., a leading independent proxy advisory firm, recommended earlier this month that shareholders vote to elect multiple Macellum nominees, including former Macy's, Inc. Chief Merchandising Officer Jeff Kantor and former L Brands, Inc. Chief Financial Officer Pamela Edwards.

**At this point, we believe the current Board has forfeited its right to continue to oversee Kohl's and review offers versus the Company's internal plan – and it should immediately commit to accepting the highest financed acquisition offer received at the conclusion of the sale process.**

**We are actively exploring claims against the Board and will take legal action, if necessary, to protect our interests as a major long-term shareholder and the interests of all our fellow shareholders."**

(Emphasis in original.)

143.    These revelations sent Kohl's stock price tumbling, from $45.04 per share on Thursday May 19 to: $39.20 per share on Friday, May 20; $38.24 per share on Monday, May 23; and $36.18 per share on Tuesday, May 24, 2022—a 20% drop in addition to the credibility and reputational damage the events discussed above caused investors and the Company.

144.    Then, on June 6, 2022, after market close, Kohl's filed the 6/6/22 8-K announcing that it had entered "exclusive negotiations" with holding company FRG to sell at $60.00 per share and that there would be a three-week period for FRG and its financing partners "to finalize due diligence and financing arrangements and for the parties to complete the negotiation of binding documentation."

145.    On this news, the Company's share price rose approximately 9%, from $42.12 per share at close on June 6, 2022 to $45.59 per share at close on June 7, 2022, on unusually high trading volume.

146.    On June 22, 2022, shortly before the three-week exclusive negotiation period expired, CNBC published an article titled "Franchise Group considers lowering Kohl's bid closer

to $50 a share from about $60, source says"[3] ("6/22/22 CNBC Article"). Citing a confidential source, the 6/22/22 CNBC Article reported that FRG was "actively considering whether buying Kohl's is the best use case of Franchise Group's capital."

147.    The Company's share price declined approximately 8.8% from $42.33 per share June 21, 2022 at close to $38.61 on June 22, 2022 at close, on unusually heavy trading volume.

148.    Finally, on July 1, 2022, Kohl's filed with the SEC on Form 8-K a press release announcing that the Board had "unanimously determined to conclude its strategic review process," continuing "Despite a concerted effort on both sides, the current financing and retail environment created significant obstacles to reaching an acceptable and fully executable agreement. Given the environment and market volatility, the Board determined that it simply was not prudent to continue pursuing a deal" ("7/1/22 8-K").

149.    With the 7/1/22 8-K, the market finally learned what the Board and management knew all along—regardless of potential benefit to shareholders, there would be no sale.

150.    On this news, Kohl's share price fell approximately 19.6%, from $35.69 per share at market close on June 30, 2022, to $28.68 per share at market close on July 1, 2022 on unusually heavy trading volume.

151.    These damages are a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties. Thus, as a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

---

[3]  https://www.cnbc.com/2022/06/22/franchise-group-considers-lowering-kohls-bid-closer-to-50-a-share-from-60.html

## DERIVATIVE ALLEGATIONS

152.    Plaintiff brings this action derivatively in the right and for the benefit of Kohl's to redress the Individual Defendants' breaches of fiduciary duties and violations of law.

153.    Plaintiff is a current Kohl's stockholder, has continuously held shares of Kohl's stock since at least October 28, 2020, and was a stockholder of Kohl's at all times relevant to the wrongdoing as alleged herein.

154.    Plaintiff will adequately and fairly represent Kohl's interests and those of its stockholders in enforcing and prosecuting the Company's rights.

155.    To that end, and as set forth above, Plaintiff, through his counsel, served the Demand, in accordance with Wisconsin law, on October 13, 2023.  Exhibit A.

156.    On December 13, 2023, the Board acknowledged the receipt of the Demand; requested proof of Plaintiff's relevant stock purchases; and advised Plaintiff's counsel (through Latham) that the Company decided to "defer making a final decision on the Demand at this time." Exhibit B.

157.    Plaintiff's counsel complied with the Board's proof of ownership request on January 16, 2024, despite having no duty to do so at the time.  *See* Exhibit C.  Critically, Plaintiff requested that the Company execute tolling agreements with the individuals identified in the Demand by April 1, 2024 to protect the Company's claims from the quickly approaching statute of limitations for breach of fiduciary duty under Wisconsin law. *Id*. Plaintiff has received no response.

158.    To date, Plaintiff has received no substantive response to his Demand and the commencement of this action is necessary to protect the Company's claims.  The Board's failure to investigate the allegations in the Demand and take even the most basic steps to preserve the

44

Company's claims, demonstrates the Board's unwillingness to evaluate the Demand in good faith. As such, this shareholder derivative action should proceed.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duties

159.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

160.    As alleged in detail herein, each of the Individual Defendants violated and breached their fiduciary duties of loyalty and good faith by causing or allowing the Company to disseminate to Kohl's shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings, press releases, conference calls and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

161.    As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's internal controls were properly functioning, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

162.    The Individual Defendants, most notably those serving on the Board's Audit Committee, willfully ignored the known and pervasive problems with Kohl's's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence.

163.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages.  Thus, as a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

## COUNT II

### Against the Individual Defendants for Unjust Enrichment

164.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

165.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Kohl's.

166.    Plaintiff, as a shareholder and representative of Kohl's, seeks restitution from the Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Kohl's and that Plaintiff is a proper and adequate representative of the Company;

B.    Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

C.    Directing Kohl's to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable law and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-

Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

D.      Awarding to Kohl's restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: May 16, 2024                          Respectfully submitted,


                                             **THE WEISER LAW FIRM, P.C.**

                                             *s/ James M. Ficaro*
                                             JAMES M. FICARO
                                             jficaro@weiserlawfirm.com
                                             JOHN J. GROSS
                                             jgross@weiserlawfirm.com
                                             Four Tower Bridge 200
                                             Barr Harbor Drive, Suite 400
                                             West Conshohocken, PA 19428
                                             Telephone: (610) 225-2677